UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 22-10060-RGS

UNITED STATES OF AMERICA

v.

DENNIS RAYMOND ROWE

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS

November 19, 2024

STEARNS, D.J.

Defendant Dennis Rowe, who is charged in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h), seeks to suppress wiretap recordings gathered by Jamaican law enforcement officials and later provided to law enforcement authorities in the United States. Rowe alleges that the telephone intercepts were made without the lawful authorization of the Jamaican courts or an equivalent plenary authority. Conceding that, as a foreign national, he is not entitled to Fourth Amendment protection, Rowe nonetheless maintains that evidence of the recordings (and their fruits) should be suppressed as violative of his Fifth Amendment right to due

process.[1] The government does not dispute Rowe's recitation of the underlying facts but notes that, since the filing of the motion to suppress, it has produced evidence to Rowe that the wiretaps were instigated by Jamaican police and conducted pursuant to orders issued by the Jamaican courts.

RULINGS OF LAW

With rare exception, the Fourth Amendment exclusionary rule does not apply to evidence seized by police in a foreign country, even when the seizure would be illegal under American law or the law of the country where the seizure takes place. *See United States v. Janis*, 428 U.S. 433, 455 n.31 (1976); *United States v. Morrow*, 537 F.2d 120, 139-140 (5th Cir. 1976); *United States v. Stokes*, 726 F.3d 880, 890 (7th Cir. 2013); *cf.*

---

[1] Conversely, the Warrant Clause of the Fourth Amendment does not apply to the extraterritorial search or seizure of a foreign national's property or person by American officials; such searches and seizures need only satisfy the Fourth Amendment's requirement of reasonableness. *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 157, 167-168 (2d Cir. 2008); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 271, 274-275 (1990) (holding that the Fourth Amendment has no application to a warrantless search by American agents of a nonresident alien's property located in a foreign country, although Chief Justice Rehnquist, the author of the majority opinion, would have gone further and excluded aliens illegally in the United States without "substantial connections with this country" from all Fourth Amendment protection on the basis that the Fourth Amendment — unlike the Fifth — by its explicit terms applies only to "the People of the United States"). The difference in the wording of the Amendments provides the basis for Rowe's assertion of a Fifth Amendment claim.

2

*Commonwealth v. Wright*, 479 Mass. 124, 130-131 (2018) (as *Miranda* has no legal force outside the territorial jurisdiction of the United States, statements made to foreign police are admissible so long as they were made voluntarily).

There are two exceptions. If the conduct of foreign officials is "shocking" to the judicial conscience, or if American officials substantially participate in the search of a United States citizen (or resident alien) on foreign soil, United States constitutional restrictions come into play. *See United States v. Hensel*, 699 F.2d 18, 25 (1st Cir. 1983); *United States v. Mitro*, 880 F.2d 1480, 1482 (1st Cir. 1989). Conduct does not shock the judicial conscience simply because it is illegal. *United States v. Getto*, 729 F.3d 221, 228-229 (2d Cir. 2013) (defendant alleged that Israeli police had lied about obtaining a prior search warrant). Nor does passive participation by American officials in a foreign search implicate Fourth Amendment concerns. *See Commonwealth v. Gagnon,* 16 Mass. App. Ct. 110, 123-125 (1983) (the mere sharing of informant information with foreign police does not establish the "close" collaboration necessary to trigger application of the Fourth Amendment); *Getto,* 729 F.3d at 230, 233 ("constitutional restrictions" attach only when the conduct of foreign police render them virtual agents of United States authorities or where cooperation is simply a

ruse for evading constitutional constraints applicable to American officials); *United States v. Benedict*, 647 F.2d 928, 930-931 (9th Cir. 1981) (American agents passively stood by while Thai police conducted a warrantless search of an apartment); *United States v. Maturo*, 982 F.2d 57, 61-62 (2d Cir. 1992) (DEA supplied telephone numbers and wiretapping equipment at the request of Turkish authorities); *cf. People v. Douglas*, 788 P.2d 640, 656, 658-659 (Cal. 1990) (no evidence that Mexican authorities were acting at the behest of American officials in extracting defendant's confession); *United States v. Abu Ali*, 528 F.3d 210, 228-229 & n.5 (4th Cir. 2008) (the submission of proposed questions by United States agents witnessing a Saudi interrogation did not amount to a "joint venture" requiring *Miranda* warnings).

## CONCLUSIONS OF FACT AND LAW

Whether under the Fourth Amendment or the Fifth Amendment, a defendant bears the burden of showing by a preponderance of the evidence a basis for the suppression of evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). Here, there is nothing that would shock the judicial conscience about one sovereign state sharing evidence with another that one of its nationals has committed an extraterritorial crime impacting the receiving state. The same is true of the gathering of evidence by means of a

judicially-authorized wiretap,[2] an investigatory method permitted by the laws of both Jamaica and the United States.  Finally, there is no evidence offered by the defendant that would suggest that the Jamaican police were acting as a catspaw or alter-ego of United States law enforcement.

## ORDER

For the foregoing reasons, the motion to suppress is <u>DENIED</u>.  The court sees no reason to hold a hearing on the issue given the lack of any material dispute of fact.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[2] The court recognizes that defendant's claim that the Jamaican wiretap was not legally authorized was made in good faith at the time the motion to suppress was filed.